532 S.E.2d 654

**STATE of West Virginia ex rel. Larry F. PARSONS, Administrator of the South Central Regional Jail, Petitioner,**

v.

**Honorable Paul ZAKAIB, Jr., Judge of the Circuit Court of Kanawha County, and Gerald K. Mollohan, Respondents.**

No. 27469.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 2000.

Decided June 9, 2000.

William C. Forbes, Prosecuting Attorney, Michael C. Allen, Special Prosecuting Attorney, Charleston, West Virginia, Attorneys for Petitioner.

Linda Gay, Carrie Webster, Assistant Public Defenders, Charleston, West Virginia, Attorney for Respondents.

McGRAW, Justice:

This original proceeding in prohibition raises the issue of whether the Circuit Court of Kanawha County exceeded its legitimate powers by failing to apply the recently-promulgated Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia (hereafter the "Habeas Corpus Rules") to a discovery dispute arising in a case pending at the time such rules were adopted. Because application of the new Habeas Corpus Rules in such a context was obviously both feasible and worked no injustice on the parties, we conclude that the lower court overstepped its authority in declining to apply the new rules to an existing discovery dispute.

## I.

### BACKGROUND

This case arises out of a habeas corpus proceeding currently pending in the Circuit Court of Kanawha County. The petitioner in that case, Gerald Mollohan, is challenging his 1995 convictions on two counts of first-degree sexual assault. Pursuant to an agreed scheduling order, Mollohan served discovery requests on the State on July 23, 1999, seeking answers to interrogatories and the production of certain documents. On that same date, Mollohan also noticed the depositions of, and served subpoenas on, two assistant prosecuting attorneys—K. Michele Drummond and Donald Morris, both of whom participated in Mollohan's underlying criminal prosecution. The State, as respondent before the circuit court, subsequently filed omnibus objections to this discovery together with a motion to quash the subpoenas, arguing among other things that "Rule 71B of the West Virginia Rules of Civil Procedure does not authorize the use of discovery in extraordinary writs." The circuit court rejected this contention in a November 3, 1999 order, finding that "the civil procedure rules govern discovery in this post-conviction habeas corpus proceeding." The State's motion to quash was accordingly denied, and Mollohan's motion to compel discovery granted.[1]

The State subsequently sought prohibition relief in this Court,[2] and on December 15, 1999, we issued an order requiring the circuit court to determine "whether discovery should proceed in the underlying proceeding in light of th[e] Court's adoption of Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia." The Habeas Corpus Rules took effect immediately upon their issuance on December 13, 1999, and, by their own terms, "apply to all post-conviction habeas corpus matters pending in the circuit courts of this State ... [on the date of adoption]."

In response to this order, the circuit court conducted a hearing and subsequently entered an order on February 14, 2000. In that order, the circuit court began by stressing that it did not construe this Court's December 15 order as requiring it "to hold a hearing and determine whether good cause exists for Mr. Mollohan to obtain the discovery he had requested previously, as required by Rule 7 of the new ... [Habeas Corpus Rules]."[3] Rather, according to the lower court, this Court's ruling "left it ... [with] discretion to determine whether discovery should proceed pursuant to the November 3, 1999 order, in light of the new habeas rules that took effect December 13, 1999." Stating that "consideration such as logic, fairness and judicial economy require it to apply the new rules to post-conviction habeas proceedings ... based on the stage to which that action had progressed as of December 13, 1999," the circuit court ruled that "the West Virginia Rules of Civil Procedure, and not the Rules Governing Post–Conviction Habeas

1. The circuit court did, however, sustain the State's objection to Mollohan obtaining grand jury materials relating to his prosecution, finding that the requirements of W. Va. R.Crim. P. 6 were not displaced by the discovery provisions of the Rules of Civil Procedure.

2. On December 10, 1999, the State produced the documents and interrogatory answers sought by Mollohan's July 23 discovery requests. As a consequence, the dispute since that date has pertained exclusively to Mollohan's attempt to subject the two assistant prosecuting attorneys to deposition.

3. Habeas Corpus Rule 7 provides as follows:
   **Rule 7. Discovery.**
   (a) *Leave of court required.*—In post-conviction habeas corpus proceedings, a prisoner may invoke the processes of discovery available under the West Virginia Rules of Civil

Procedure if, and to the extent that, the court in the exercise of its discretion, and for good cause shown, grants leave to do so. If necessary for effective utilization of discovery procedures, counsel shall be appointed by the court for a petitioner who qualifies for the appointment of counsel under Rule 3(a).
   (b) *Requests for discovery.*—Requests for discovery shall be accompanied by a statement of the interrogatories or requests for admission and a list of the documents, if any, sought to be produced.
   (c) *Expenses.*—If the respondent is granted leave to take the deposition of the petitioner or any other person, the court may, as a condition of taking the deposition, direct the respondent to pay the expenses of travel, subsistence and fees of counsel for the petitioner to attend the taking of the deposition.

Corpus Proceedings in West Virginia, shall govern the discovery depositions."

The State now seeks a writ of prohibition to compel the circuit court to apply the new Habeas Corpus Rules to the requested depositions, thus requiring Mollohan to demonstrate "good cause" before obtaining such discovery.

## II.

### STANDARD FOR PROHIBITION RELIEF

The general standard for issuance of the writ of prohibition is set forth in W. Va.Code § 53–1–1 (1923), which states that prohibition shall lie "in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction exceeds its legitimate powers." *See* syl. pt. 2, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984); syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). The statute creates two distinct circumstances warranting prohibition relief: (1) where a tribunal acts upon a matter over which it has no jurisdiction; and (2) where a tribunal, although retaining jurisdiction, nevertheless acts outside of its legitimate powers. The present case falls under the second category, as there is no jurisdictional challenge to the circuit court's action.

■ This Court has developed a significant body of law pertaining to the second category of prohibition cases, including the adoption of a five-factor test for determining when such relief is appropriate:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

■ We have imposed tight constraints on the extraordinary writ of prohibition, frequently emphasizing that "this Court will use prohibition ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common[-]law mandate...." Syl. pt. 1, in part, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). The Court has concomitantly stressed that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court...." Syl. pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977); *see also* syl. pt. 3, *State ex rel. McDowell County Sheriff's Dep't v. Stephens*, 192 W.Va. 341, 452 S.E.2d 432 (1994). This does not mean, however, that prohibition may never be employed where a lower court is imbued with some measure of discretion over a particular matter. For example, while trial courts retain considerable discretion in managing discovery, *see* syl. pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995), our past cases have recognized that there may be circumstances where this discretion is abused to such an extent that it gives rise to a clear question as to whether there has been a departure from legal requirements. In syllabus point 1 of *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992), we held that notwithstanding the discretion ordinarily afforded a circuit court on discovery matters, "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Thus, although this

Court will not use the writ of prohibition to remedy simple abuses of discretion on the part of inferior tribunals, such relief may be obtained to correct substantial abuses of discretion tantamount to a clear misapplication of applicable law.

## III.

## DISCUSSION

While this case calls upon the Court to determine the correctness of the circuit court's refusal to apply the discovery provisions of the new Habeas Corpus Rules to a case pending at the time these rules became effective, it is important to place the current controversy into perspective. Thus, before turning to the precise issue involved in this case, it bears rehashing the broader events that have brought us to this point.

### A. *Adoption of the Habeas Corpus Rules*

This case is largely the product of the confusion resulting from the 1998 amendments to the West Virginia Rules of Civil Procedure. Those amendments included the adoption of Rule 71B,[4] as well as the recision of Rule 81(a)(5).[5] The intent behind such changes, as stated by the Advisory Committee, was to "dramatically simplify the procedural aspects of writ practice and align them more closely with 'ordinary' civil procedure." While these amendments have certainly had such effect, they have also had the unfortunate consequence of interjecting considerable uncertainty regarding the procedures applicable to collateral proceedings brought pursuant to the West Virginia Post–Conviction Habeas Corpus Act, W. Va.Code §§ 53–4A–1 to –11 (the "Act").

Prior to 1998 amendments, it was quite clear that the Rules of Civil Procedure did not apply to collateral actions brought pursuant to the Act. *E.g., State ex rel. Bradley v. Johnson,* 152 W.Va. 655, 658, 166 S.E.2d 137, 139 (1969) (noting that Rules of Civil Procedure "do not . . . apply to criminal proceedings, or to the extraordinary proceeding[ ] of habeas corpus. . . ."), *overruled on other grounds by State v. Eden,* 163 W.Va. 370, 256 S.E.2d 868 (1979). We stated succinctly in *Gibson v. Dale,* 173 W.Va. 681, 319 S.E.2d 806 (1984), that "the rules of procedure in criminal and civil cases do not apply in post-conviction habeas corpus proceedings." *Id.* at 688 n. 7, 319 S.E.2d at 813 n. 7. In making this broad statement, the Court in *Gibson* relied largely upon the express exclusion contained in Rule 81(a)(5). As a consequence of the abrogation of this rule, many of the circuit courts of this jurisdiction understandably interpreted such change to signify a departure from this past practice.

In response to the uncertainty generated by this development, the Court, pursuant to its rulemaking authority under Article VIII, § 3 of the West Virginia Constitution, promulgated the Habeas Corpus Rules. Adopted on December 13, 1999 and given immediate effect, these rules are modeled closely upon analogous federal rules governing post-conviction habeas corpus.[6] Importantly, when appropriate, the Rules of Civil Procedure may now be applied to habeas proceedings, but only to the extent that they do not conflict with the more specific provisions of the new rules themselves. The most significant aspects of the Habeas Corpus Rules largely codify habeas practice as it was prior to 1998.

This is clearly evident in the area of discovery. In accord with our earlier holding in *Gibson,*[7] where we limited discovery to cir-

---

4. Rule 71B provides, among other things, that "[t]he West Virginia Rules of Civil Procedure govern the procedure for the application for, and issuance of, extraordinary writs." W. Va. R. Civ. P. 71B(a).

5. Rule 81(a)(5) provided that, with limited exception, the Rules of Civil Procedure did not apply "to proceedings under the writs of mandamus, prohibition certiorari, habeas corpus, and quo warranto, and upon an information in the nature of a quo warranto."

6. *See* Rules Governing Section 2254 Proceedings for the United States District Courts; and Rules Governing Section 2254 Proceedings for the United States District Courts, Pub.L. No. 94–426, 90 Stat. 1334 (1976).

7. As a more basic proposition, the Court in syllabus point 5 of *Gibson* borrowed from *Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), holding that "[a] habeas corpus petitioner is entitled to careful consideration of his grounds for relief, and the court before which the writ is made returnable has a duty to provide

cumstances where a "petitioner can demonstrate that the materials in the possession of the State contain relevant evidence which would enable ... [the petitioner] to prove specific allegations entitling him to relief," 173 W.Va. at 689, 319 S.E.2d at 814, Habeas Corpus Rule 7(a)[8] now similarly requires that a habeas petitioner obtain leave of court through "good cause shown" before invoking discovery procedures. Rule 7(a) is intended to be consistent with the standard enunciated in *Gibson*.

■ Thus, unlike an ordinary civil litigant, a habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97, 103 (1997). Instead, discovery is available only where a court in the exercise of its discretion determines that such process would assist in resolving a factual dispute that, if resolved in the petitioner's favor, would entitle him or her to relief.[9]

### B. *Application of the New Rules to a Pending Case*

■ We have never enunciated a broad rule concerning the application of new or amended rules to pending cases. Instead, our practice has been to incorporate specific transition provisions into various bodies of procedural rules. The approach taken in W. Va. R.Crim. P. 59 is indicative of this practice:

These rules shall take effect on October 1, 1981. They govern all proceedings in actions brought after they take effect and also further proceedings in actions then pending, except to the extent that in the opinion of the circuit court their applica-

tion in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies.

*See also* W. Va. R. Civ. P. 86. In the case of our recent adoption of the Habeas Corpus Rules, the Court likewise indicated that "[t]he Rules will apply to all post-conviction habeas corpus matters pending in the circuit courts of this State on the date of this Order." The obvious thrust of this type of language is to require application of the new or amended procedural rules to the maximum extent possible. *See Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir.1995); *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 546 (5th Cir.1992). While there is a strong judicial presumption against the retroactive application of new laws to pending cases, "we have consistently held that statutory changes that are purely procedural in nature will be applied retroactively." *Joy v. Chessie Employees Fed. Credit Union*, 186 W.Va. 118, 121, 411 S.E.2d 261, 264 (1991) (citing *Pnakovich v. SWCC*, 163 W.Va. 583, 589, 259 S.E.2d 127, 130 (1979)); *see Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 335, 480 S.E.2d 538, 544 (1996) ("remedial and procedural provisions are applied normally to pending cases despite the absence of a clear statement of legislative intent to do so"). The reasoning behind this, as explained in *Public Citizen*, is that "[i]n these situations, the reliance interest that is the foundation of the interpretive principle limiting retroactive application is not engaged." *Id.*[10]

■ The Habeas Corpus Rules of course do not contain any provisions limiting

---

whatever facilities and procedures are necessary to afford the petitioner an adequate opportunity to demonstrate his entitlement to relief." *See also State ex rel. Nazelrod v. Hun*, 199 W.Va. 582, 583, 486 S.E.2d 322, 323 (1997) (per curiam).

**8.** See note 3, *supra*, for the text of Rule 7.

**9.** The use of discovery procedures in the habeas context can, when properly supervised by a court, assist in moving post-conviction proceedings toward prompt resolution on the merits:

One recurrent problem in the administration of a system of post-conviction relief arises when a prisoner alleges in the application [petition] an apparently meritorious claim but the evidence that can be adduced to support the claim is unknown to the court. Such cases

should not routinely result in evidentiary hearings without preliminary inquiry into the basis for such claim. Premature scheduling of plenary hearings is wasteful of judicial time, is burdensome to the state if the prisoner must be transported to the courthouse, and is not the most efficient procedure to develop the merits of a case. Controlled use of discovery devices, if only on a limited scale, will demonstrate that applications are baseless while marshaling the evidentiary basis for applications with merit. 4 *Standards for Criminal Justice* 22–46 (2d ed. 1986) (American Bar Association).

**10.** The Court in *Public Citizen* went on to emphasize that "even here the procedural/substantive distinction is not talismanic. The test of the interpretive principle laid down by the United States

their retroactive operation to situations where such application would be practicable and just. This flexibility should be presumed, however, notwithstanding the absence of such express language. As our previous cases have stressed, "[p]rocedural rules are designed to facilitate adjudication on the merits; their purpose is not to defeat meritorious claims by requiring mechanical adherence to rules which unique circumstances make inadvertently oppressive." *Wheeling Dollar Sav. & Trust Co. v. Singer*, 162 W.Va. 502, 506–7, 250 S.E.2d 369, 372 (1978) (citing *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973)). Therefore, when, during the pendency of a proceeding, a new procedural rule is promulgated, or an existing procedural rule is amended, a circuit court, in its discretion, may nevertheless revert to the previous rule where application of the new or amended rule would be impracticable or work injustice in that proceeding. A circuit court should, however, make every effort to apply the new or amended procedural rule to any matter pending at the time the new rule becomes effective.

■ The circuit court was thus correct in discerning that it had discretion in applying the new rules to the underlying habeas action; however, we still find that such discretion was substantially abused by the decision not to apply Habeas Corpus Rule 7 to the discovery matter at issue. We can discern no conceivable basis upon which to conclude that application of Rule 7 to the depositions in question—which had not yet taken place at the time the circuit court entered its February 14, 2000 order [11]—was in any way infeasible or harbored any potential to work injustice on the habeas petitioner. Accordingly, we are compelled to award the relief sought by the State.

## IV.

## CONCLUSION

For the reasons stated, we grant the relief requested by petitioner, and issue a writ of

Supreme Court in *Landgraf* [*v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)] is unitary. It is whether the 'the new provision attaches new legal consequences to events completed before its enactment.' 511 U.S. at 270, 114 S.Ct. at 1499, 128 L.Ed.2d at 255. If a new procedural or remedial provision would, if applied in a pending case, attach a new legal consequence to a completed event, then it will not be applied in that case unless the Legislature has made clear its intention that it shall apply." *Public Citizen*, 198 W.Va. at 335, 480 S.E.2d at 544. *See also State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 738, 474 S.E.2d 906, 918 (1996) ("Though a workers' compensation statute, or amendment thereto, may be construed to operate retroactively where mere procedure is involved, such a statute or amendment may not be so construed where, to do so, would impair a substantive right.") (citations omitted); *Lester v. State Compensation Comm'r*, 123 W.Va. 516, 521, 16 S.E.2d 920, 923–24 (1941) ("The rule against construing legislation as retroactive is somewhat relaxed in cases where it is classed as remedial, or affects procedure only.... But even where the legislation affects procedure only, it cannot be made retroactive when the effect will be 'to impair the obligation of contracts or to disturb vested rights.'" (citation omitted)), *overruled on other grounds by Sizemore v. State Workmen's Compensation Comm'r*, 159 W.Va. 100, 219 S.E.2d 912 (1975). We note that there is no contention here that Habeas Corpus Rule 7 is anything other than a purely procedural rule, or that its application in this context would "attach a new legal consequence to a completed event."

Nor is there any assertion that application of this rule to the pending discovery dispute would run afoul of the ex post facto clauses of the West Virginia and federal constitutions. Consequently, we do not address these issues.

11. Mollohan argues that the circuit court's action was correct in that the issue regarding the depositions had already been ruled upon prior to the adoption of the Habeas Corpus Rules. The flaw in this argument, however, is that the circuit court's prior ruling on the deposition issue was effectively set aside by this Court's prohibition order of December 15, 1999. At the very least, our order required the circuit court to examine the issue anew, giving attention to the new rules. In other words, the circuit court was not free to treat the issue as having been previously resolved. Any other interpretation would make this Court's previous order a dead letter. *Cf.* syl. pt. 5, *Maynard v. Hammond*, 139 W.Va. 230, 79 S.E.2d 295 (1953) ("The determination of an issue in an extraordinary proceeding in this Court constitutes the law of the case in a subsequent proceeding on writ of error or appeal wherein the real parties in interest and the issues are the same, and there has been nothing new injected by pleadings or evidence which calls for a different conclusion."); syllabus, *Reynolds v. Virginian Ry. Co.*, 117 W.Va. 359, 185 S.E. 568 (1936) ("The determination of an issue by an appellate court will be regarded as the law of the case upon a subsequent review unless there has been a material change in the record justifying a different ruling.").

prohibition requiring the Circuit Court of Kanawha County to subject the deposition requests currently pending in the underlying habeas proceedings to the requirements of Rule 7 of the Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia.

Writ of prohibition granted as moulded.